## GARVIN v. GARVIN.

1. A surety paid a judgment against his principal and himself, and then directed a levy on the principal's property, who thereupon instituted suit to enjoin. A decree was rendered in the surety's favor—that he "have leave to enforce said judgment to the amount contained in his said execution, with interest from its date." Under an execution issued and entitled of this latter cause, for the amount due and for the costs, a tract of land was levied and sold as the property of the principal. *Held,* that the sale could be referred to both judgments, and that the purchaser was protected by the lien of the old judgment as well as of that under which the sale was made.

2. The court is not bound by the argument of an opinion, but only by what is decided by it.

Before COTHRAN, J., Aiken, April, 1886.

The opinion states the case.

*Messrs. G. W. Croft* and *Henderson Bros.,* for appellant.

*Messrs. Izlar & Glaze* and *P. A. Emanuel,* contra.

November 25, 1887.  The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.  This was an action to recover a tract of land in Aiken County.  In order to be intelligible, it will be necessary to make a short statement.  Both the plaintiff and defendant claimed under Robert Garvin, the brother of the plaintiff and the father of the defendant—the plaintiff under a deed from the sheriff, who ,sold the tract in dispute, along with others, as the property of Robert, under a judgment and execution of the plaintiff, January 7, 1878; the defendant claimed under a deed direct from his father, Robert, prior to the aforesaid sheriff's sale, viz., April 15, 1874.  The principal question, therefore, was whether the plaintiff's judgment had a lien upon the land when it was conveyed by Robert to his son in 1874.

There had been a long litigation between the brothers, John and Robert, as to the validity of a certain judgment, *John Fox* v. *Robert Garvin, John Garvin, et al.*, originally entered as far back as 1868, upon which John claimed to have paid $1,836.65, as surety of Robert, and to that extent to be the owner of the judgment by subrogation.  In this view John had the (Fox) judgment levied upon the property of Robert, who thereupon instituted proceedings on the equity side of the court against John, for the double purpose of enjoining the enforcement of the Fox judgment on the ground that he (John) was one of the principals, and the judgment was in fact paid, and also for "an account" to a large amount.  John answered that he was only surety in the Fox judgment, and that he was entitled to enforce it for what he had paid on it, $1,836.65, and that he owed Robert nothing on "the account claimed."  He prayed that the complaint should be dismissed, but asked for no affirmative relief.

The issues of law and of fact were referred to J. M. Williams, Esq., as referee, who found the principal facts for John: that he was only surety on the Fox note, and that he owed Robert nothing; and "the defendant (John) should have leave to enforce said judgment, to the amount contained in his said execution, with interest from its date," &c.  Exceptions were filed, and the cause was heard by Judge Reed, who, on September 14, 1877, filed the following decree: "On reading and filing the report of J. M. Williams, Esq., special referee herein, &c., it is ordered,

that the exceptions be overruled and the report of the referee be confirmed, and the plaintiff have leave to enter judgment in accordance therewith, and the same become the judgment of this court," &c. Upon this decree judgment was enrolled and execution issued by John, the defendant, under the title of the case in which it was rendered, viz., *Robert Garvin* v. *John Garvin.* The lands were sold under this execution and purchased as before stated by the plaintiff (John) on January 7, 1878. Robert Garvin afterwards made a motion to set aside the execution and the sales under it, which was denied by Judge Pressley, and upon appeal to this court his order was affirmed. See *Garvin* v. *Garvin*, 21 *S. C.*, 84, where a short history of the case is given.

In that case this court held as follows: "Was the execution under which the sales were made so irregular and illegal as to avoid the sales? It seems to us that, when properly understood, the objections are purely technical, and amount to this—that the execution was called by the wrong name. The judgment entered in the case of *Robert Garvin* v. *John Garvin*, authorized the defendant (John) to issue execution against the plaintiff (Robert) for the sum of $1,836.65, with interest thereon from May 9, 1876, on the judgment of *Fox* v. *Robert Garvin*, assigned to the defendant, and that the defendant do recover of the plaintiff the further sum of $472.40 costs," &c. Was this not a judgment on a money decree for $1,836.65, and the further sum of $472.-40? The execution issued for the precise sum authorized, but entitled of the case out of which it arose, *Robert Garvin* v. *John Garvin*, and not of the old Fox judgment for the use of John. We incline to think the execution was properly entitled of the case in which the judgment was rendered. But suppose it had been styled (as contended it should have been) '*John Fox for the use of John Garvin*,' how could that have benefited Robert Garvin? * * * The execution was certainly to issue, whether it went in the old name or put into a new form to enforce judgment for the money paid by John, being, however, for the identical amount due on the old execution by Robert. We think the execution was authorized by the enrolled judgment, and that it properly retained the title of the judgment, upon which it was based. But even if there was a misnomer as to the

title, that could not be more than an irregularity, which did not render the execution absolutely void"—citing authorities.

The sales being thus affirmed, John Garvin, as purchaser, brought suit to recover the different tracts of land. He found the defendant, R. C. Garvin, in possession of the "Mill tract," claiming, as stated, under a deed from Robert, older than the judgment in the case of *Garvin* v. *Garvin*, under which the plaintiff purchased. He interposed several defences, and among others the statute of limitations; but he first made the point that John Garvin, having obtained judgment against Robert for the amount alleged to have been paid by him as surety in *Fox* v. *Robert Garvin*, that older judgment was superseded and merged into that of *Garvin* v. *Garvin*, which, of course, acquired a lien on the property of Robert only from the time of its entry, December 10, 1877.

The cause came on for trial before Judge Cothran, who took the view of the defendant, and granted a non-suit upon the ground that the plaintiff, John, having accepted without appeal the relief given by Judge Reed's order, for the money paid as surety for Robert in the case of *John Fox* v. *Robert Garvin et al.*, could not "now set up the older lien of the Fox judgment, which was merged into the later judgment of *Garvin* v. *Garvin*, in which his claim for money paid was adjudicated," &c. From this order the plaintiff appeals upon the following grounds: "1. Because his honor erred in deciding that the judgment of *John Fox* v. *Robert Garvin et al.*, was merged in the judgment of *John Garvin* v. *Robert Garvin*, entered under Judge Reed's order; and his honor also erred in holding that said judgment had lost its lien upon the tract of land that was sold by Robert Garvin to the defendant. 2. Because it is submitted that the judgment entered under the order of Judge Reed preserved the lien of the Fox judgment upon all the lands owned by Robert Garvin at its date, and authorized the issuing of the execution under which the land in dispute was sold; and that even if such execution was unauthorized, then the sale of the land might be referred to the execution of John Fox and J. H. Livingston, his assignee, for the use of *John Garvin* v. *Robert Garvin et al.*, issued under the transcript of judgment, &c., and his honor erred

in not so deciding.   3. Because it is submitted that the case as proved, shows a legal title to the land in dispute in the plaintiff, and the trespass on the part of the defendant having also been proved, the case should have gone to the jury, and it was, therefore, error to dismiss the complaint."

The only question in the case presented is, whether it was error to hold that the judgment of *Fox* v. *Robert Garvin et al.*, was merged into that of *Garvin* v. *Garvin*, and the plaintiff, John Garvin, had no lien upon the property of Robert older than the judgment in the latter case, which was entered on December 10, 1877, after the "Mill tract" was sold to the defendant.   Something was said in the argument as to the point having been already decided in the former opinion of this court, in the last report of the case of *Garvin* v. *Garvin*, 21 *S. C.*, 87.   It is true that the member of the court who was charged with writing that opinion, did in the last paragraph indicate some such view.   But the question now made was not then before the court.   The single question there was, whether the execution entitled as of the case of "*Garvin* v. *Garvin*" was so irregular and illegal as to avoid the sales made under it.   That was decided negatively, and, of course, is *res adjudicata*.   The court, however, is not considered as bound by the argument of an opinion, but only by what is decided by it.   The remark referred to was made in the course of argument, was unnecessary to the question then under consideration, and was one of those observations which, as some one has well said, "fall from a judge on a legal question suggested by a case before him, but not arising in such a manner as to require decision by him.   It is, therefore, not binding as a precedent on other judges, although it may be entitled to more or less respect," &c.   The question now made for the first time is *res integra*.

When John Garvin was enjoined from enforcing the Fox judgment against Robert, he did not in terms pray for affirmative relief as to renewal of the Fox judgment or execution to enforce it; but he did deny the allegation of the complaint that he was one of the principal debtors, and claimed that he was only surety, and as such had paid for Robert $1,836.65.   This made an issue as clearly as if he had sued Robert for so much money paid to his

use. The case went to the referee, Williams, who found the facts for John, his report was confirmed by Judge Reed's order, and judgment was enrolled and execution issued in that case, *Garvin* v. *Garvin*. It seems to us that this was no renewal of the Fox judgment or execution, but an original adjudication of the issue joined, into which no part of the older Fox judgment could be incorporated so as to give it, as legal process, a different date from that on which it was filed.

The judgments, then, being distinct, did the rendition of the latter have the effect of merging into it the older Fox judgment? That must, as I think, depend upon the inquiry whether the Fox judgment was the cause of action of the Garvin judgment. "A judgment is extinguished when, being used as a cause of action, it grows into another judgment." *Freem. Jud. Sales*, 216. So the Fox judgment would be merged in that of *Garvin* v. *Garvin*, if the former were the cause of action of the latter. It is true that they were very closely connected, but when critically examined, we think it appears that the Fox judgment was not the consideration of the Garvin judgment. The cause of action in the latter was the money paid by John for Robert on the Fox judgment, but not that judgment itself, which was entered on a note, for a larger sum, long before John paid the money for which he recovered. It was the question of fact as to the payment of the money, which was adjudged in the case of *Garvin* v. *Garvin*. It is true, the amount recovered was precisely the same, and in the same right, as that claimed by John on the Fox judgment, but that question between John and Robert, although arising out of the Fox judgment, had really never been adjudicated, and we cannot say that merely this adjudication brought the case within the principle of "merger." "The law of merger as applied to judgments does not forbid all inquiry into the nature of the cause of action. Such inquiry may be prosecuted for any purpose consistent with the judgment, and is frequently necessary to its interpretation. * * * If the prevailing party was entitled to certain privileges, or exempted from certain burdens, under his contract, he may be entitled to the same privileges and exemptions in many cases, under his judgment." *Freem. Jud. Sal.*, § 244 and notes.

The judgments, then, both being in existence, and the pro-

perty of the debtor Robert being sold by the sheriff under process issued under the junior one of *Garvin* v. *Garvin*, could the plaintiff have the benefit of the older lien of the Fox judgment? It seems to me that the confusion in the case has arisen from the fact that, while John has a judgment in his own name for the money paid by him on the Fox judgment, he claims to enforce it with the lien, not of the judgment in his own name, but of the older Fox judgment, also owned by him. There is no doubt that ordinarily the lien of a judgment is limited to the time of its entry. But the seeming anomaly here is caused by the application of the doctrine of subrogation, which is of very wide extent and operation. It must be considered as established in *Garvin* v. *Garvin*, that John, as the surety of Robert, paid the money on the judgment of Fox, as surety, which *ipso facto* (to that extent), entitled him to that judgment with its original lien. It became his property.

Besides the general doctrine, we have in this State an act, which in express terms covers this case. Section 2180 of the General Statutes provides that: "The payment by a surety of a debt secured by judgment or decree shall not operate as a satisfaction of such judgment or decree against the principal debtor, but by such payment the said surety shall be entitled to all the rights and privileges of the plaintiff in such judgment or decree," &c. Now, if the payments by John as surety had not been contested, there can be no doubt that he could have levied and sold under the Fox judgment, as if he, instead of Fox, had been named the plaintiff in the judgment. Why should it alter the case that he established his payments judicially in the case of *Garvin* v. *Garvin?* We suppose that a surety in a judgment who pays it, is thereby entitled to the judgment, whether his payments were made to appear by simple receipts which were admitted, or he established them in a judicial proceeding.

The doctrine of subrogation is essentially equitable, and is therefore always controlled by equitable principles. While I cannot see how the order of Judge Reed, in the equity suit of *Garvin* v. *Garvin*, could give active energy as legal process to the execution on the Fox judgment, which, as it seems to me, could only be done upon proper application and in the manner

prescribed by law for that purpose ; yet I think that the confirmation of referee Williams's report, which gave John Garvin "leave to enforce said judgment (Fox) to the extent of the amount mentioned in his said execution with interest from its date," was substantially a decree by Judge Reed, for the money paid by John as surety on that judgment, coupled with the declaration that, in enforcing that money decree, he was entitled to the right of subrogation and the lien of the older Fox judgment. "The equitable jurisdiction of subrogation still remains, and has some most important advantages. All the co-sureties and the principal debtor being parties to the equity suit, the liabilities of each can be adjusted and established by a single decree," &c. 3 *Pom. Eq. Jur.*, section 1418 and notes.

The judgment of this court is, that the non-suit granted upon the Circuit be set aside, and the cause remanded for a new trial.